# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.C., R.C., D.K., and R.K.**

**No. 18-0029** (Raleigh County 2017-JA-195, 196, 197, and 198)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.M., by counsel G. Todd Houck, appeals the Circuit Court of Raleigh County's December 21, 2017, order terminating her parental rights to A.C., R.C., D.K., and R.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Amber R. Hinkle, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 15, 2017, the DHHR filed an abuse and neglect petition against petitioner alleging that her residence was infested with mice and bugs, covered in trash, and that the children were observed walking barefoot on broken glass from the windows. According to a referral, A.C. and R.C. were frequently left home alone and neighbors fed them because there was limited food in the home. A Child Protective Services ("CPS") worker visited the home and observed that the porch was covered in trash bags, loose trash, and broken glass. Petitioner would not allow the CPS worker inside the home and reported that the children did not live there. Petitioner also advised the CPS worker that the children were living with another family, but could not provide the worker with an address. The CPS worker ultimately located the children at two different residences. Upon investigation, the CPS worker discovered that petitioner was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

arrested on August 7, 2017, for driving on a suspended license and possession of methamphetamine.

On August 25, 2017, the circuit court held a preliminary hearing, which petitioner waived. The circuit court ordered petitioner to undergo a psychological evaluation and participate in drug screens. On October 6, 2017, the circuit court held an adjudicatory hearing. Petitioner did not attend, but was represented by counsel. The DHHR presented evidence of the conditions of the home. Based on the evidence presented, petitioner was adjudicated as an abusing parent. On November 3, 2017, the circuit court held a dispositional hearing. Petitioner tested positive for methamphetamine and buprenorphine prior to the hearing, which was ultimately continued. According to the guardian, following the hearing, petitioner missed drug screens, failed to produce samples at drug screens, and tested positive for controlled substances. Petitioner was arrested on November 20, 2017, for shoplifting.

On December 15, 2017, the circuit court held a final dispositional hearing. A CPS worker testified that the DHHR offered to agree to a post-dispositional improvement period if petitioner participated in a psychological evaluation and drug screens. However, petitioner missed several drug screens and tested positive for methamphetamine on November 13, 2017. Petitioner also failed to appear for her psychological evaluation. Testimony further established that A.C. and R.C. exhibited behavioral problems at school. Ultimately, the CPS worker testified that petitioner repeatedly refused to take responsibility for her actions. In regard to the deplorable condition of her home, petitioner told the CPS worker that she did not live there. She also failed to take responsibility for her arrests and positive drug screens and attempted to place blame on other people. The DHHR recommended termination of petitioner's parental rights due to her failure to comply with the circuit court's orders. The guardian also advised that petitioner failed to cooperate with the DHHR and recommended that petitioner's parental rights be terminated.

Petitioner testified that she called Saar Psychological to advise them that she was unable to appear for her psychological evaluation, but only after she missed the appointment. Petitioner argued that she did not attend her psychological evaluation because school in Raleigh County was canceled due to snow and she could not find a ride to Charleston. Petitioner denied having a substance abuse problem and stated that she did not think she needed treatment, but that she would go to drug rehabilitation only if she had to in order to keep her children. When asked what caused her to test positive for methamphetamine, petitioner replied that she did not know. Petitioner requested a post-dispositional improvement period and argued that an additional forty-five to ninety days for an improvement period would not "have any impact on the children." The circuit court found that petitioner had a serious substance abuse problem that she had not acknowledged or worked to remediate and failed to cooperate with the DHHR. The circuit court also found that petitioner failed to establish by clear and convincing evidence that she could fully participate in an improvement period, denied her motion for a post-dispositional improvement

period, and, ultimately, terminated her parental rights to the children in its December 21, 2017, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-dispositional improvement period. In support of this argument, petitioner claims that she was fully prepared to enter an inpatient substance abuse program and that she would have attended the psychological evaluation, if not for inclement weather the day of the appointment.

We do not find this argument persuasive. West Virginia Code § 49-4-610(3)(B) provides that a parent may receive a post-dispositional improvement period when the "[parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

---

[2]According to the DHHR and the guardian, D.K. and R.K. are in the full custody of their non-abusing father. The father of A.C. and R.C. is deceased. According to the parties, the permanency plan for A.C. is adoption by the current foster family. R.C. is currently placed in a level three residential behavioral facility.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Petitioner testified at the dispositional hearing that she would go to inpatient substance abuse treatment, but only if she had to in order to keep her children. However, petitioner testified that she did not have a substance abuse problem and that she did not need treatment, despite several missed drug screens and a positive screen for methamphetamine. When asked why she tested positive for methamphetamine, petitioner responded that she did not know. Because petitioner failed to acknowledge that she had a substance abuse problem and failed to take responsibility for her actions, the conditions of abuse and neglect were untreatable, making an improvement period futile at the children's expense. Based on this evidence, petitioner failed to demonstrate that she would substantially comply with the terms and conditions of a post-dispositional improvement period. We find no error in the circuit court's denial of petitioner's motion for a post-dispositional improvement period.

Next, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period when the best interests of the children would not be affected by granting her additional time to participate in an improvement period. We disagree. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W.Va. 91, 755 S.E.2d 8 (2014). Although petitioner argues that receiving a post-dispositional improvement period may only delay the proceedings for forty-five or ninety days and would not affect the children, petitioner fails to acknowledge that this would cause a delay in establishing permanency for the children. As discussed above, petitioner failed to prove by clear and convincing evidence that she would comply with a post-dispositional improvement period. She also failed to acknowledge her substance abuse issues and the conditions of abuse and neglect, making an improvement period futile. The CPS worker's testimony regarding A.C.'s and R.C.'s behavioral problems and difficulties in school demonstrates the importance of establishing a stable home environment for these children. Therefore, termination of petitioner's parental rights was in the children's best interests.

Finally, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

4

Petitioner argues that she was not provided with a family case plan or any "good faith assistance . . . to ameliorate the neglectful or abusive conditions or circumstances." [3] However, petitioner does not acknowledge that she failed to comply with orders from the circuit court directing her to participate in drug screens and a psychological evaluation. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, due to the lack of a permanency plan for R.C. following his release from a behavioral facility or transfer to a step-down facility, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the Court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order

---

[3]We have held that

[t]he purpose of the family case plan as set out in W.Va. Code [§] 49-6D-3(a) [now W.Va. Code § 49–4–408(a) ] ... is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.

Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M*., 177 W. Va. 688, 356 S.E.2d 181 (1987). While petitioner argues that the DHHR failed to file a family case plan, she admits that the parties "informally agreed to the terms of a . . . family case plan." Further, the record is clear that petitioner was well aware of what was required of her in order to remedy the conditions of abuse and neglect in the home as evidenced by the circuit court's orders to participate in drug screens and psychological testing. As such, under the limited circumstance of this case, the DHHR's failure to timely file a family case plan had no prejudicial impact on petitioner's failure to remedy the conditions of abuse and neglect in the home.

must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 21, 2017, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.